STATE OF NEBRASKA, APPELLEE, V. GEORGE W. BRISTER, APPELLANT.

435 N.W.2d 679

Filed February 17, 1989.   No. 88-384.

Thomas Blount for appellant.

Robert M. Spire, Attorney General, and Melanie J. Whittamore for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and CARLSON, D.J.

GRANT, J.

On November 20, 1987, defendant-appellant, George W. Brister, was charged in the county court for Cass County with contributing to the delinquency of a child in violation of Neb.

Rev. Stat. § 28-709(1) (Reissue 1985), a Class I misdemeanor. Following a trial to the court, the county court found defendant guilty as charged and ordered a presentence investigation. Defendant was sentenced to probation, with conditions including 6 days in the Cass County jail and a $250 fine. The district court for Cass County affirmed the judgment of the county court, and defendant appealed to this court, alleging there was insufficient evidence, as a matter of law, to convict him of the crime charged in the complaint. We affirm.

The burden is on the State to prove all essential elements of the crime charged. *State v. George*, 228 Neb. 774, 424 N.W.2d 350 (1988). A judgment of conviction will not be reversed on appeal unless the evidence is so lacking in probative force that it is insufficient as a matter of law. *Id.*; *State v. Anderson*, 229 Neb. 436, 427 N.W.2d 770 (1988).

The record shows that the conduct complained of occurred on the night of October 3, 1987, in Plattsmouth, Cass County, Nebraska. The complaining witness, the target of defendant's actions and attentions, was a young girl, 15 years old. Defendant was 21 and had a wife and child. The girl and her two younger brothers had gone across the street to defendant's house at 7 p.m. because the girl's parents had gone out for the evening and defendant's wife was going to babysit the two boys.

At approximately 8 p.m., defendant asked the girl if she would go to the grocery store with him to get some orange juice. After purchasing the orange juice, defendant did not go directly home, but drove down past the railroad tracks near the river. Defendant's reckless driving frightened the girl. After defendant returned to his own neighborhood, the girl testified, defendant asked her if she would sit next to him "because it made him feel younger." After she declined to do so, defendant touched her on the leg on the inside of her thigh.

Defendant and the girl then returned to defendant's home. The girl went across the street to her own house to get a deck of cards to play a card game with defendant's wife. At her home, the girl went into her bedroom to telephone her boyfriend. Approximately 10 minutes later, defendant knocked on the door. When the girl let him in the house, defendant put his arm around her and stated that he was sorry for the way he was

acting, and tried to kiss her on the lips. When the girl resisted, defendant tried to lift her shirt up. She pushed his hands down and told him to leave.

After the girl went back to her bedroom to resume her telephone conversation, defendant returned to the house. He sat on the edge of the girl's bed and wrote her a note telling her, as the girl testified, that "he loved me and he cared about me and that he was going to leave his wife and his kid and his career to run away with me."

The girl told defendant to leave. Defendant then told her that his wife could not fill his needs and he knew the girl could. Defendant was rubbing her neck, and pulled his hands down over her chest, touching her breasts. Defendant again left the house at the girl's request.

The girl then went back to defendant's house to get her brothers. Defendant told his wife that he had to talk to the girl in the bedroom about "boyfriend problems." While they were in the bedroom, defendant told her that he loved her. Defendant's wife interrupted this conversation.

The girl took one of her brothers home. At midnight, she looked out the door and saw defendant coming toward the house. She locked the house and reported the incident to her aunt, who called the police. The aunt testified that the girl sounded hysterical over the telephone and that defendant was standing in front of the girl's house when the aunt arrived there. The girl testified that although defendant "never came out and asked [her] to have sex with him," he did ask her to run away with him three or four times on the night of October 3. She told him no because she "didn't feel the same way about him that he said he felt about [her]."

Section 28-709(1) provides:

> Any person who, by any act, encourages, causes, or contributes to the delinquency or need for special supervision of a child under eighteen years of age, so that such child becomes, *or will tend to become*, a delinquent child, or a child in need of special supervision, commits contributing to the delinquency of a child.

(Emphasis supplied.) Section 28-709(2)(b) defines the term "child in need of special supervision" as "any child under the

age of eighteen years . . . who is habitually truant from school or home; or . . . who deports [her]self so as to injure or endanger seriously the morals or health of [her]self or others." A "delinquent child" is "any child under the age of eighteen years who has violated any law of the state or any city or village ordinance." § 28-709(2)(a).

Defendant contends § 28-709 requires that the acts of the defendant actually result in the child's becoming either delinquent or in need of special supervision. He argues, at page 9 of his brief, that because the girl continued to reject defendant's advances,

> There is no evidence nor any reason to believe that [the girl] has or will now, as a result of [defendant's] acts, violate any law of the state or city or village ordinance, become wayward or habitually disobedient, uncontrolled by her parents, habitually truant from school or home, nor deport herself so as to injure or endanger seriously the morals or health of herself or others.

The county court found that the defendant, by asking the girl to run away with him, was encouraging her to become truant from home, and that the defendant's inappropriate touching and sexual advances toward the girl had the effect of encouraging her to deport herself so as to injure or endanger seriously her morals. Such action would tend to make the girl become a delinquent child. That the young girl was able to resist the blandishments of the older defendant is a tribute to her and should not result in the exoneration of defendant for his improper conduct.

Section 28-709 is addressed to the conduct of the person accused of contributing to the delinquency of a child, not the conduct of the child. The statute does not require that the child actually become delinquent or in need of special supervision, but only that the defendant encourage the child to become delinquent or to need special supervision so that the child will "tend to become a delinquent child, or a child in need of special supervision." Defendant's actions were such as to support a finding that he had violated the statute. See *In re Interest of R.J.*, 224 Neb. 842, 401 N.W.2d 691 (1987).

In light of the foregoing, we hold that the evidence was not so

lacking in probative force that it was insufficient as a matter of law to support defendant's conviction.

The decision of the district court, affirming the decision of the county court, is affirmed.

AFFIRMED.